1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Kenneth William Krauze,                    No. CV11-01197-PHX-DGC

10                 Plaintiff,                   **ORDER**

11  v.

12  Michael J. Astrue, Commissioner of Social
    Security Administration,

13                 Defendant.

14

15         Plaintiff Kenneth William Krauze filed applications for disability insurance

16  benefits ("DIB") and supplemental security income benefits ("SSI"), alleging a disability

17  onset date of February 1, 2006.   Tr. 53.   Following an administrative hearing on

18  March 16, 2010 (Tr. 23-45), the administrative law judge ("ALJ") issued a decision on

19  May 26, 2010, finding that Plaintiff was not disabled within the meaning of the Social

20  Security Act (Tr. 63).  On March 16, 2011, the Appeals Council denied Plaintiff's request

21  for review (Tr. 1), making the ALJ's decision the final decision of Defendant for

22  purposes of judicial review.  *See* 20 C.F.R. § 422.210(a).  Plaintiff commenced this action

23  for judicial review pursuant to 42 U.S.C. § 405(g).  For the reasons that follow, the Court

24  will reverse Defendant's decision and remand for further proceedings.[1]

25

26

27  ────────────────

    [1] Plaintiff's request for oral argument (Doc. 19) is denied because the issues are
28  fully briefed and argument will not aid the Court's decision.  *See* Fed. R. Civ. P. 78(b);
    *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

## I.   Background.

Plaintiff was born in 1948.  He completed high school, but did not receive additional vocational training.  Tr. 26.  He worked as a construction worker, retail clerk, and social club manager.  Tr. 40.  He has not performed any work since February 1, 2006, when he was fired from his job at Home Depot for repeatedly calling in sick, reporting to work late, or not reporting to work at all.  Tr. 27-28.  Plaintiff alleges that he was unable to work due to his pain and his use of medication.  *Id.*

### A.   Medical Evidence.

Prior to Plaintiff's alleged disability onset date in February 2006, he had surgeries for hernia repair.  Tr. 350-54.  An MRI showed disc bulging in his lumbar spine (Tr. 356), and a bone scan showed degeneration of his lower cervical spine (Tr. 355).  In March 2004, Plaintiff complained of increasing pain at the site of his hernia repair, cramping and burning sensations, intermittent sharp pain in the lumbar region, and cramping of his right calf after standing and walking more than 60 minutes.  Tr. 496.  In June 2006, Plaintiff received treatment from his primary care physician, Dr. Adam S. Nally, for panic attacks and associated heart palpitations, sweaty palms, and overwhelming anxiety.  Tr. 508.  Dr. Nally diagnosed Plaintiff with generalized anxiety disorder, panic disorder, and chronic groin pain.  Tr. 520.  Plaintiff underwent a full body bone scan on September 7, 2004, which revealed accumulation of activity in his lower cervical spine and left wrist, likely on a degenerative basis.  Tr. 355.

In January 2006, one month before the alleged disability onset date, Plaintiff met with Dr. Nally and reported increased anxiety.  Tr. 531-34.  Bradley Hall, a physician's assistant in Dr. Nally's office, examined Plaintiff and found that he had a full range of motion in all of his extremities without pain, as well as normal muscle tone and strength in his extremities.  Tr. 531-34.

Throughout the remainder of 2006, Plaintiff received treatment from Dr. Barbara Fong three times for management of his leg and right groin pain.  Tr. 243-44, 251-53, 265.  Dr. Fong prescribed Percocet (pain pills), Duragesic (pain patches), and Ativan

(anxiety medication).  *Id.*  On November 15, 2006, Dr. Fong noted that Plaintiff was walking with a cane due to increased pain.  Tr. 243.  Dr. Fong completed two Arizona disability forms in which she opined that Plaintiff should not lift, bend, or twist for long periods of time, should reduce his hours at work, should not lift more than 20 pounds, and should not sit or stand for more than 45 minutes at a time.  Tr. 261, 258.

In April 2007, Plaintiff went to the emergency room after passing out.  Tr. 315-18. A vascular study showed narrowing and plaque in some of Plaintiff's arteries (Tr. 297-98), a CT brain scan showed some atrophy (Tr. 319), and a CT chest scan showed no active cardiopulmonary disease (Tr. 320-21).   A few days later, Plaintiff met with Dr. Nally for a follow up visit.  Tr. 315-18.  He reported that he was feeling better except for some increased stress and anxiety; he also reported that he had stopped taking his medications approximately one month before his emergency room incident.  *Id.*; *see also* Tr. 322-26.

In August 2007, Plaintiff returned to Dr. Nally and reported that he had been hospitalized for four days for vomiting, kidney failure, exacerbation of his chronic obstructive pulmonary disease (COPD), high blood pressure, and low sodium levels (hyponatremia).  Tr. 327-30.  There are no treatment records from this hospitalization in the record.  Doc. 16, at 4 n.2; *see* Tr. 327 (Dr. Nally's August 2, 2007 note indicating that he did not "have any records of this admission at this time.").  Plaintiff was diagnosed with hypertension, COPD, generalized anxiety disorder, and hyponatremia.   Tr. 569. Dr. Nally noted that Plaintiff had not been taking his medications as directed, and that Plaintiff was a "very poor historian."  Tr. 327-30.

Plaintiff received treatment from Dr. Fong on August 27, 2007 for right side groin pain.  At that time, he usually took four Percocet pills per day for his pain, and could only walk 500 feet before having to sit down due to severe pain.  Tr. 240.  Plaintiff's physical exam indicated bilateral para-vertebral tenderness at L4-L5.  Tr. 241.

On September 20, 2007, Plaintiff received treatment from Dr. Jugroop S. Brar, a pulmonologist, for shortness of breath and coughing.  Tr. 626-27.  Dr. Brar noted an

unremarkable physical examination, clear lungs, and normal cardiovascular sounds, but decreased air movement in Plaintiff's chest.  Tr. 626-27.  He also noted that Plaintiff smoked. Tr. 387-88.  Dr. Brar diagnosed mild COPD, lung nodules, and a history of a fungal infection in his lungs (valley fever).  Tr. 387-88, 626-27.  Later that month, a full body PET scan returned normal results.  Tr. 390, 633-34.

In October 2007, Dr. Sharon Steingard performed a psychiatric evaluation of Plaintiff.  Tr. 337-41.  She did not review any of Plaintiff's medical records, and relied solely on her interview with Plaintiff.  Tr. 337.  Plaintiff reported that he had anxiety and panic attacks, and some depression that would last for a few days at a time, but that he never had any formal psychiatric care or hospitalization.  Tr. 337-38.  Plaintiff also reported that he lived alone, cooked, grocery shopped, handled money, did household chores, and smoked one and a half packs of cigarettes per day.  *Id.*  Dr. Steingard diagnosed alcohol abuse in remission, depression, and panic attacks, as well as amnesic disorder that had been resolved.  Tr. 339.  She opined that Plaintiff had intact memory, could understand instructions, and could complete tasks as instructed, but that he would have difficulty maintaining sustained concentration and persistence while experiencing a panic attack, which occurred a couple of times per month.  Tr. 339-40.  She added that his ability to interact in social situations was unimpaired, but that he would have difficulty handling some stress.  *Id.*

Plaintiff's November 2007 chest x-ray was normal (Tr. 335), and a pulmonary function test showed no evidence of respiratory illness or bronchial spasms (Tr. 394-96).  The same month, Dr. Norman Fernando performed a physical evaluation of Plaintiff.  Tr. 342-43.  Dr. Fernando found a clear chest, normal gait, normal flexion, and full range of motion with no inflammation in Plaintiff's joints.  *Id.*  He diagnosed Plaintiff with "diffuse pain," tobacco use, and mild COPD.  Tr. 344.  Dr. Fernando opined that if Plaintiff's claims of lumbar spine disease were true, he should not lift more than 20 pounds occasionally and 10 pounds frequently; could walk for three to four hours per day with no assistive device; could frequently climb ramps and stoop; and could occasionally

climb ladders, kneel, crouch, and crawl.  Tr. 344.

Also in November 2007, state agency psychologist Heather Barrons reviewed Plaintiff's medical records and completed a psychiatric review form.   Tr. 369-81.  Dr. Barrons opined that Plaintiff had non-severe anxiety and depression.  Tr. 369.  She noted that Plaintiff's anxiety was well-controlled with medication and that he had no history of mental health treatment.  Tr. 381.

In December 2007, state agency physician Dr. Erika Wavak reviewed Plaintiff's medical records in connection with his disability application.  Tr. 397-404.  Dr. Wavak opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk six hours each day in an eight-hour work day; and perform all postural activities except that he could never climb ladders, ropes, or scaffolds.  Tr. 397-404.  The same month, Dr. Brar opined that Plaintiff's breathing problems did not limit his ability to perform work in any way.  Tr. 386.

On January 15, 2008, Plaintiff treated with Dr. Todd Turley.  Dr. Turley diagnosed lumbar radiculopathy and neuralgia/neuritis/radiculitis.  Tr. 802-04.  A January 2008 CT scan of Plaintiff's chest showed some lung nodules, mild fibrosis, and some emphysema-like changes in his lungs.  Tr. 630-32.

On February 5, 2008, Dr. Turley treated Plaintiff for persistent back pain that radiated down both legs.   Tr. 799.   Plaintiff underwent a lumbar spine MRI on February 6, 2008, which revealed multilevel degenerative joint disease and degenerative disc disease; disc bulge at L3-L4, L4-L5, and L5-S1; mild spinal canal stenosis at L3-L4; mild-moderate spinal canal stenosis at L4-L5; and bilateral L3-L4, L4-L5, and L5-S1 neural foraminal stenosis.  Tr. 605-06.

Also in early 2008, Plaintiff met with Dr. Brar and complained of shortness of breath.   Tr. 625.   Dr. Brar noted that Plaintiff continued to smoke and was "not interested" in quitting, and that Plaintiff wanted to apply for disability even though his pulmonary function tests "have not been that bad."  Tr. 625.  Dr. Brar noted that Plaintiff did have severe back pain and walked with a cane.  *Id.*  He opined that Plaintiff's

shortness of breath "is possibly related to deconditioning and obesity as much as it is related to COPD." *Id.*

In March 2008, Plaintiff received treatment at the Sun Health Dell Webb Hospital Pain Management Center for continuing complaints of lumbar pain.  He was continuing to use a cane.  MRIs revealed stenosis at L4-L5 (Tr. 413-14), and an epidural injection was administered to provide temporary relief (Tr. 792).  Dr. Turley performed additional epidural steroid injections on April 22, 2008 (Tr. 791-92) and May 7, 2008 (Tr. 788-79).

Throughout 2008, Plaintiff met with Dr. Nally approximately once a month for medication refills.  He continued to complain of coughing, high blood pressure, headaches, anxiety, and back pain.  Tr. 548-96, 599-603, 609-14, 674-77, 704-21.  Dr. Nally noted that Plaintiff had a full range of motion without pain, normal muscle tone and strength in his extremities, and a normal gait.  Tr. 548-96, 599-603, 609-14, 704-21.  Plaintiff also visited The Pain Center of Arizona approximately once a month throughout 2008 and 2009 for pain medication and periodic epidural injections.  Tr. 723-804.

In June 2008, Dr. Perla T. Gabuya performed a psychiatric evaluation of Plaintiff. Tr. 685-89.  Dr. Gabuya noted that Plaintiff walked with a cane, but that his gait appeared normal.  Tr. 687.  In her mental status evaluation of Plaintiff, Dr. Gabuya opined that Plaintiff could perform simple and repetitive tasks with supervision; perform detailed and complex tasks with reminders; accept instructions from supervisors; interact with co-workers and the public; maintain regular attendance; and deal with usual stress with some supervision.  Tr. 687-89.

In July 2008, state agency psychologist Dr. Stephen Fair reviewed Plaintiff's medical records and agreed with Dr. Barron's previous assessment that Plaintiff's mental health impairments were non-severe.  Tr. 690; *see* Tr. 369-81.  The same month, state agency physician Dr. Thomas Disney reviewed Plaintiff's medical records and agreed with Dr. Wavak's previous opinion that Plaintiff could perform light work with some additional postural and environmental restrictions, except that Dr. Disney opined that Plaintiff could occasionally crouch and crawl (as opposed to frequently, as Dr. Wavak

1    had opined).  Tr. 691-98; 397-404.

2        In September 2008, Dr. Nally completed a check-the-box form regarding

3    Plaintiff's ability to perform work-related activities.  Tr. 700-01.  Dr. Nally opined that

4    Plaintiff could sit more than two hours but less than three hours in an eight-hour

5    workday; stand and/or walk less than one hour in an eight-hour work day; lift more than

6    10 pounds but less than 20 pounds; carry less than 10 pounds; never crawl, climb, stoop,

7    crouch, or kneel; occasionally bend and balance; frequently reach; had limitations on the

8    use of his feet; should avoid unprotected heights; could have moderate exposure to

9    moving machinery and marked changes in temperature and humidity; and had restrictions

10   on his exposure to dust, fumes, and gas.  *Id.*  Dr. Nally concluded that Plaintiff was

11   unable to work on a full-time basis due to his back pain and anxiety.  *Id.*

12       **B.    Hearing Testimony.**

13       At the March 16, 2010 administrative hearing, Plaintiff testified that he had

14   worked at Home Depot "on the floor" for a long time, but was assigned to Home Depot's

15   call center approximately one and one-half years before being fired in February 2006.

16   Tr. 28.  Plaintiff described pain in his hips, back, legs, and groin (for which he had hernia

17   surgery in 2001), as well as shortness of breath from heavy smoking, anxiety, and

18   memory problems due to low sodium levels.  Tr. 30-32.  He denied any side effects from

19   his medications.  Tr. 38.  Plaintiff reported that he used a cane to walk, but that the cane

20   had not been prescribed by a doctor.  Tr. 33.

21       Vocational expert George Bluth testified that a hypothetical person of Plaintiff's

22   age, education, and work history, who could perform light work with additional

23   limitations, was limited to sitting for 30 minutes at a time, standing for 45 minutes at a

24   time, and ambulating for three to four hours a day with normal breaks, could perform

25   Plaintiff's past relevant work as a telephone customer service representative and a social

26   club manager.  Tr. 40-42.

27       On May 26, 2010, the ALJ issued her decision.  Tr. 53-63.  She concluded that

28   Plaintiff had some severe impairments, including back pain due to arthritis and

1    degenerative disc disease, chronic pain due to a prior hernia, COPD, high blood pressure,

2    and obesity, but that these impairments were not per se disabling.  Tr. 55-58.  She found

3    that Plaintiff had a residual functional capacity ("RFC") to perform a limited range of

4    light work.  Tr. 58.  The ALJ concluded, based on the vocational expert's testimony, that

5    Plaintiff could perform his past relevant work as a telephone customer service

6    representative and a social club manager.  Tr. 62-63.  As a result, the ALJ found that

7    Plaintiff was not disabled under the Social Security Act.  Tr. 63.

8    **II.    Standard of Review.**

9         Defendant's decision to deny benefits will be vacated "only if it is not supported

10   by substantial evidence or is based on legal error."  *Robbins v. Soc. Sec. Admin.*,

11   466 F.3d 880, 882 (9th Cir. 2006).  "'Substantial evidence' means more than a mere

12   scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind

13   might accept as adequate to support a conclusion."  *Id.*  To determine whether substantial

14   evidence supports Defendant's decision, the Court must review the administrative record

15   as a whole, weighing both the evidence that supports the decision and the evidence that

16   detracts from it.  *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998).  If there is

17   sufficient evidence to support Defendant's determination, the Court cannot substitute its

18   own determination.  *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

19   **III.   Analysis.**

20        Plaintiff claims that the ALJ failed properly to weigh his subjective complaints,

21   failed properly to weigh medical source opinion evidence, and failed to articulate

22   sufficient reasons for rejecting third-party reports.  Doc. 13, at 11-24.

23        **A.    Plaintiff's Subjective Complaints.**

24        The ALJ considered Plaintiff's claims that he was unable to work on a regular and

25   continuing basis.  Tr. 59.  Plaintiff reported that he experienced chronic lumbar pain,

26   shortness of breath, and chronic pain in his groin from a hernia, despite having had

27   surgeries to repair the hernia.  *Id.*  At the administrative hearing, Plaintiff testified that he

28   could sit only for 30 minutes and stand for 45 minutes before needing to change position

due to his pain.  *Id.*  He also stated that he could walk only one block before needing rest, and that he must use a cane.  *Id.*  He testified that he needed prescription muscle relaxers and medication to alleviate his pain symptoms.  *Id.*

To determine whether a claimant's testimony regarding subjective symptoms is credible, the ALJ must engage in a two-step analysis.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'  The claimant, however, 'need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom.'"  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted).  "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'"  *Id.* at 1037 (citations omitted).

At the first step, the ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms."  Tr. 59.  Given this conclusion, and the lack of any evidence of malingering, the ALJ was required to present "specific, clear and convincing reasons" for finding that Plaintiff's subjective descriptions of his symptoms was not credible.  *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  Plaintiff claims that the ALJ erred by finding that his assertions not credible without sufficient specificity and explanation to satisfy the clear and convincing standard.  *See* Doc. 13, at 15 ("The ALJ did not explain which symptoms could reasonably be caused by [Plaintiff's] medically determinable impairments nor did she specify which of [Plaintiff's] statements were not credible.  Federal courts have repeatedly criticized such generalized credibility findings.").

In the second step of the credibility analysis, "[t]he ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  "In weighing

a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *see Smolen*, 80 F.3d at 1284; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995).

The ALJ stated that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC]." Tr. 59. She then identified the following testimony, accompanied by reasons for why that testimony was not credible: Plaintiff asserted disabling physical impairments, but is capable of many activities of daily living without assistance; he reported shortness of breath, but continues to smoke at least one pack of cigarettes per day and has done so for decades; he claimed to require the assistance of a cane in order to walk, but a cane has not been prescribed or deemed medically necessary by a physician; and he testified that medication reduces his pain level without producing side effects. Tr. 59. The Court will address each of these credibility conclusions.

### 1.    Daily Activities.

The ALJ discredited Plaintiff's assertions of disabling physical impairments because "the record shows that he is capable of many activities of daily living and does not require others to assist him." Tr. 59. The ALJ noted Plaintiff's statements that he "lives alone and is independent in routines of self care, such as bathing, dressing, and shaving," that he "is able to prepare simple meals and perform light household chores, such as vacuuming and dusting," and that he "is able to go out daily, sometimes twice per day, and can walk, drive a car, and shop at the store for food." Tr. 59.

Plaintiff also reports, however, that he has trouble putting on socks, shoes, and pants because of his pain, that he has trouble lifting his left leg up and over the tub in order to take a shower, and that sometimes raising his hands and arms causes pain down his legs. Tr. 185. He vacuums, dusts, sweeps, and mops, but claims that "everything is

painful" and takes three times longer.  Tr. 186.  He needs help lifting things because he "get[s] tired very fast from the pain."  *Id.*  He claims that he can only drive five or ten minutes, and that anything longer is painful.  Tr. 187.  He reports that he shops for food, but uses an electric cart and gets in and out as fast as he can.  *Id.*  The ALJ does not mention these additional details in her opinion.

The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from [his] credibility as to [his] overall disability."  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  Neither of the two grounds for using daily activities to form the basis of an adverse credibility determination is present.  *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  First, Plaintiff's activities, as described, do not contradict his other testimony that chronic pain prevents him from sustaining work on a regular and continuing basis.  *See* Tr. 56.  Second, his activities do not meet the threshold for transferable work skills.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The Ninth Circuit has held that if a claimant "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  Here, there is neither evidence to support that Plaintiff's activities were transferrable to a work setting nor proof that Plaintiff spent a substantial part of his day engaged in transferable skills.  *See Fair*, 885 F.2d at 603.  An ALJ must make "specific findings relating to [the daily] activities" and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination.  *Burch v. Barnhart*, 400 F.3d 676, 681(9th Cir. 2005).  The ALJ has not made such specific findings.  The fact that Plaintiff may perform daily activities "despite pain . . . does not mean [he] could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved."  *Vertigan*, 260 F.3d at 1050.

## 2.      Shortness of Breath.

The ALJ discredited Plaintiff's reports of shortness of breath by noting that Plaintiff "continues to smoke at least one pack of cigarettes per day and has smoked that much for decades."   Tr. 59.   Plaintiff objects that the ALJ cites to a consultative examination by Dr. Fernando performed in November 2007, approximately 28 months before the administrative hearing, and notes that he has since tried to stop smoking. Doc. 19, at 4; *see* Tr. 343.   At the hearing, Plaintiff testified that he had reduced his smoking from two or more packs of cigarettes per day to one-half pack per day.   *Id.*; *see* Tr. 32 ("Q: Do you smoke?  A: Yes.  Q: How much?  A: A half a pack a day.  Q: You used to smoke more?  A: Oh, yeah, much more, two, two-and-a-half packs.  Q: Doctors tell you to quit?  A: Yes.  Q: Are you trying?  A: Yeah, brought it down to half a pack."). Although Plaintiff has shown improvement, the ALJ did not commit legal error by reasoning that if Plaintiff's respiratory problems were disabling, then he presumably would not continue smoking at all.   *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (ALJ's finding that the claimant continued to smoke up until one month before the hearing, despite complaining of debilitating shortness of breath and acute chemical sensitivity, supported a finding of not disabled).

## 3.      Use of a Cane.

The ALJ discredited Plaintiff's pain testimony because of his statement that he required a cane to assist him in walking even though "it has not been prescribed or deemed medically necessary by a physician."  Tr. 56.  Plaintiff argues that the ALJ has mischaracterized the record because Plaintiff did not state that his cane was required; at the hearing, Plaintiff merely testified that he uses a cane and that Dr. Fong thought it was a good idea at the time.  Doc. 13, at 17; *see* Tr. 33.  In a function report, Plaintiff reports that he uses a cane "most of the time."  Tr. 190.

The ALJ has not cited to evidence in the record that Plaintiff stated that he required the assistance of a cane.  The observation that Plaintiff used a cane when it had not been prescribed or deemed medically necessary by a physician provides little, if any,

support to discredit Plaintiff's testimony.  Plaintiff truthfully admitted that a physician had not prescribed the use of the cane.  His mere use of this device is not clear and convincing evidence to find him not credible.  *Cf. Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (ALJ properly discounted claimant's pain testimony when claimant walked slowly and used a cane at the hearing, but none of his doctors indicated that he needed an assistive device to walk, and claimant was able to stand swiftly and produce his driver's license from his rear pocket without effort or apparent discomfort).

### 4.    Pain and Medication.

The ALJ appears to have discredited Plaintiff's pain testimony because Plaintiff testified that "the prescribed pain medication reduced his level of pain and that he does not experience side effects."  Tr. 56.  At the hearing, Plaintiff testified that the medication helps "hold the pain down."  Tr. 30.  He asserted that medication reduces his pain from a level of 9 on a scale of 10 to a level 5 on a scale of 10.  Tr. 56.  Although the ALJ did not specifically state that she was discrediting Plaintiff's pain testimony, she did not include chronic pain in the hypothetical questions she asked of the vocational expert at the hearing. Thus, the ALJ did not determine whether Plaintiff's chronic pain, in addition to his other symptoms, would preclude him from working.  Tr. 41-42.  The Court concludes from this approach that the ALJ did not credit Plaintiff's pain testimony.

Plaintiff objects that he regularly complained to his physicians that medication did not adequately control his pain.   Doc. 13, at 17 (citing Tr. 801-04, 775-77).   In a January 15, 2008 treatment note, Dr. Turley stated that Plaintiff "has been using Percocet for pain which was ordered for the groin pain per Dr. Fong," and that Plaintiff "is noting effective pain relief with that so we will not change it."  Tr. 804.  In a September 9, 2008 treatment note, however, Dr. Turley stated: "We have him on Percocet and he is not finding this is ineffective for his pain.  The Flexeril is taking away some of the spasms but he still needs a better pain control."  Tr. 776.  Although these treatment notes are ambiguous, a reasonable summary seems to be that Percocet was somewhat effective in controlling Plaintiff's pain, but that more needed to be done – "he still needs better pain

control." *Id.* As noted above, Plaintiff testified that medications reduced his pain only from a level 9 to a level 5. In addition, the record shows that Plaintiff continually sought treatment for his pain at The Pain Center of Arizona and Sun Health Del Webb Hospital Pain Management Center throughout 2008. Tr. 413-14, 792, 769-70, 766. Plaintiff also received epidural injections that would provide "several days of relief," but the pain would return. Tr. 792.

Thus, although Plaintiff did testify that he does not experience side effects from the pain medication, the record does not support the ALJ's apparent conclusion that the medication completely controlled his pain. The Court concludes that the ALJ's reliance on Plaintiff's receipt of pain medication and the absence of side effects does not constitute "specific, clear and convincing reasons" for finding that Plaintiff's subjective descriptions of his pain not credible. *Smolen*, 80 F.3d at 1281.

### 5.   Summary and Conclusion.

The Court concludes that the ALJ's reason for discounting Plaintiff's shortness of breath complaints is valid, but that she failed to provide sufficient reasons for discounting Plaintiff's general disability and pain testimony. The Court must therefore determine whether this error was harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004).

The ALJ's incorrect reliance on Plaintiff's daily activities and his use of non-prescribed cane to discredit his disability testimony appears to have been harmless because she included virtually all of his alleged physical limitations in the questions she asked the vocational expert, and the expert said they would not preclude Plaintiff from working. Tr. 41-42.[2] However, the same cannot be said for the ALJ's disregard of Plaintiff's chronic pain testimony. The ALJ asked the vocational expert a series of

---

[2] The one possible exception concerns Plaintiff's use of a cane. The vocational expert testified that required use of a cane, when added to Plaintiff's other limitations, would prevent him from working. Tr. 42. This fact does not require reversal, however, because Plaintiff himself suggests that his use of a cane is not required. Doc. 13 at 17.

hypothetical questions that included increasingly restrictive physical conditions, eventually arriving at a hypothetical person who is restricted to sitting for 30 minutes and standing for 45 minutes at a time.   Tr. 40-42.   The ALJ said that each of these hypothetical persons – except one that required a cane – could perform the work of a customer services representative or club manager.  *Id.*  The ALJ did not, however, asked whether a person with these restrictions could perform the work if the person also suffered from chronic pain.  Because the ALJ did not ask this question, the Court cannot determine whether the ALJ's incorrect discrediting of Plaintiff's pain testimony was harmless error.  Under Ninth Circuit law, the Court must credit Plaintiff's pain testimony as true – that is, his testimony that medication reduces his pain from a level 9 to a level 5 – and remand for a determination of whether adding such pain to the list of restrictive conditions mentioned in the ALJ's hypothetical would render a person unable to work.[3]

### B.    Medical Source Evidence.

Plaintiff argues that the ALJ failed to properly weigh medical source opinion evidence. Doc. 13, at 19.  Specifically, Plaintiff claims that the ALJ erred by giving little weight to the opinion of Dr. Nally, Plaintiff's treating physician, and by giving substantial weight to the opinions of consultative examiners and state agency physicians. *Id.* at 21-23.

In weighing medical source opinions, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81

---

[3] Plaintiff's lawyer did ask the vocational expert whether a person suffering from "moderately severe pain" could perform his past work, and the expert said no. Tr. 43.  It is not clear from the transcript, however, whether the vocational expert was assuming that all of Plaintiff's other subjective symptom testimony was true – as Plaintiff's counsel had asked in the preceding question – and whether other limitations identified by Plaintiff's counsel (Tr. 42) were included in the expert's answer.  Because the Court has found that the ALJ properly discounted some of Plaintiff's subjective symptom testimony, such as shortness of breath, the Court cannot determine from the line of questioning by Plaintiff's counsel whether the ALJ's improper discrediting of the pain testimony was harmless. Remand is therefore necessary.

F.3d 821, 830 (9th Cir. 1995).  The medical opinion of a claimant's treating physician is generally entitled to more weight than the opinions of non-treating physicians.  *Id*.  A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual."  *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).  Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830.  Moreover, the ALJ must give substantial weight to the treating physician's subjective judgments in addition to his clinical findings.  *Id.* at 832-33.

An examining physician's opinion generally must be given greater weight than that of a non-examining physician.  *Id.* at 830.  As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion.  *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating or an examining physician.  *Id.* at 831.  "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence on the record."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion."  *Orn*, 495 F.3d at 631.

### 1.    Dr. Nally.

On September 18, 2008, Dr. Nally completed a medical assessment form on Plaintiff's ability to perform work-related physical activities.  Tr. 700-01.  Dr. Nally opined that Plaintiff could not perform work 8 hours a day, 5 days a week, on a regular

and consistent basis.  Tr. 700.  In the same assessment, Dr. Nally noted that Plaintiff's symptoms of pain, fatigue, and anxiety "further limit[ed] his ability to sustain work activity for 8 hours a day, 5 days a week," and rated the degree of limitation as "moderate," defined as "[a]n impairment which affects, but does not preclude ability to function."  Tr. 701.

The ALJ gave Dr. Nally's opinion little weight because his opinion "that the claimant could not sustain an 8-hour workday for 5 days per week is internally inconsistent with his assessment that the claimant's limitations are only 'moderate.'"  Tr. 61.  The ALJ appears to have misread Dr. Nally's opinion on this point.  The opinion states that there are further moderate limitations due to pain, fatigue, and anxiety, but not that Plaintiff's total limitation was only moderate.  *See* Doc. 13, at 21.

The ALJ found that the September 2008 assessment "is also inconsistent with Dr. Nally's routine treatment notes, in which the claimant has a full range of motion without pain, normal muscle strength and tone, normal neurologic findings, negative straight-leg raising, and a normal gait."  Tr. 61-62.  To support her interpretation of the evidence, the ALJ cites to progress notes from August 27, 2008 and July 9, 2008, in which Dr. Nally indicated under the heading "Objective – Physical Exam" that Plaintiff had full range of motion in his extremities without pain, normal muscle tone and strength, no joint deformity, effusion, or inflammation, and no peripheral edema.  Tr. 706, 710.  Dr. Nally's notes also indicate that Plaintiff had regular and symmetrical respirations without retraction in his lungs and chest, had a normal affect, and appeared with no acute distress.  Tr. 705, 706, 710.  Plaintiff objects that these same records document chronic groin pain under the management of Dr. Fong, low back and hip pain with lumbar spondylosis under the management of Dr. Turley, generalized anxiety disorder with severe panic and insomnia, increased neck pain, and headaches due to neck stiffness and back pain.  Doc. 19, at 8 (citing Tr. 704, 708, 709).  These notes, however, are listed as Plaintiff's subjective complaints and past medical history, and do not appear to be based on Dr. Nally's own findings.  *See* Tr. 704, 708, 709.  The ALJ is the final arbiter with

respect to resolving ambiguities in the medical evidence.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)).  The incongruity between Dr. Nally's September 2008 assessment form and his own treatment notes provides a specific and legitimate reason for giving little weight to his opinion of Plaintiff's physical limitations.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

### 2.    Remaining Medical Opinions.

Plaintiff met with three consultative examiners: Drs. Fernando, Steingard, and Gabuya.  Dr. Fernando conducted a physical examination of Plaintiff and found that he had a full range of motion in his joints, without any signs of inflammation.  Tr. 343. Dr. Fernando performed a spirometry test and found that Plaintiff put forth suboptimal effort based on a 12% decline in Plaintiff's score, post bronchodilator.  *Id.*  Based on the examination, Dr. Fernando opined that Plaintiff would be able to lift no more than 20 pounds occasionally and 10 pounds frequently, would be able to ambulate three to four hours per day, and did not need an assistive device for walking.  Tr. 344.  The ALJ gave Dr. Fernando's opinion substantial weight because it was based on an in-person examination and objective test results and was consistent with the overall record.  Tr. 60. Plaintiff argues that Dr. Fernando's report does not reference a review of any records (Doc. 13, at 22), but Dr. Fernando's opinion alone constitutes substantial evidence because it rests on his own independent examination of Plaintiff.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  Dr. Fernando's opinion serves as an additional specific and legitimate reason for giving little weight to Dr. Nally's opinion, and supports the ALJ's findings with regard to Plaintiff's exertional limitations.

Dr. Steingard evaluated Plaintiff's mental health and found that his overall mental status examination was unremarkable.  Tr. 339.  The ALJ gave substantial weight to Dr. Steingard's opinion regarding Plaintiff's ability to remember, understand, and carry out instructions and complete tasks "because these conclusions are based on objective

results from the mental status examination."  Tr. 60.  The ALJ gave little weight to Dr. Steingard's opinion regarding Plaintiff's ability to maintain concentration and persistence during a panic attack because this was based on the Plaintiff's reports rather than the objective results of the mental status examination.  *Id.*

Plaintiff also met with Dr. Gabuya for a mental status examination.  Dr. Gabuya opined that Plaintiff could perform work activities on a consistent basis for simple activities, would need reminders for more complex tasks, and would be able to maintain regular attendance in the workplace.  Tr. 689.  The ALJ gave Dr. Gabuya's opinion substantial weight because "it is consistent with the objective evidence in the record[.]"  Tr. 61.

Drs. Wavak and Disney reviewed Plaintiff's records and opined that Plaintiff was capable of limited work at the light exertional level with some postural and environmental limitations.  Tr. 60-61.  The ALJ gave substantial weight to the opinions of Drs. Wavak and Disney because they are consistent with the overall medical record. *Id.*  Plaintiff objects that Drs. Wavak and Disney never examined Plaintiff.  Doc. 13, at 22.

An examining physician's opinion constitutes substantial evidence when based on an independent evaluation of plaintiff.  *Tonapetyan*, 242 F.3d at 1149.  Here, the ALJ relied on the opinions of three examining physicians – Fernando, Steingard, and Gabuya. The opinion of a non-examining physician may also constitute substantial evidence when consistent with independent clinical findings or other evidence on the record.  *Thomas v. Barnhart*, 278 F.3d at 957.  Here, the ALJ found that the opinions of Drs. Wavak and Disney were consistent with the overall medical record.  The Court concludes that the ALJ did not err in the weight she gave to the opinions of these physicians or in her discounting of Dr. Nally's opinion.

**C.    Lay Witness Testimony.**

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."  *Stout v. Comm'r*, 454 F.3d 1050,

1053 (9th Cir. 2006); *see also* 20 C.F.R. §§ 404.1513(d)(4), (e).   Such testimony is competent evidence and cannot be disregarded without comment.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).   If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons "that are germane to each witness."  *Id.*   Plaintiff argues that the ALJ erred in rejecting the testimony of Mr. Arthur Fowler, Plaintiff's stepfather, without offering any reasons for doing so.  Doc. 13, at 23-24.

Mr. Fowler reported that Plaintiff went out each day on his own and went to the store by car.  Tr. 200.  He noted that Plaintiff's condition affected his ability to lift, stand, walk, kneel, and complete tasks, but did not know the extent of these limitations.  Tr. 202.   Defendant argues that Mr. Fowler's report mirrors Plaintiff's subjective complaints and that the ALJ reasonably rejected Mr. Fowler's statement for the same reasons she rejected Plaintiff's complaints.  Doc. 16, at 20-21.   On the contrary, the record is unclear as to whether the ALJ accepted or rejected Mr. Fowler's statement, and why.  The ALJ states only that she "has given consideration to Mr. Fowler's statements and has determined that [Plaintiff's] limitations are not as disabling as he has alleged."  Tr. 62.  *Cf. Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (finding that the ALJ gave germane reasons for rejecting lay testimony because the ALJ rejected the testimony based, at least in part, on the same reasons she discounted the claimant's allegations).   The Court's review must be "based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."   *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).   It is clear that the ALJ considered Mr. Fowler's statement, but the Court is left to guess at how that testimony influenced the ALJ's decision.

In addition to discussing limitations on Plaintiff's activities as mentioned above, Mr. Fowler asserted that Plaintiff formerly was able to work and help other people, including Mr. Fowler and his wife (Plaintiff's mother), but that the "last two years (2006 to [2008]) have been entirely different.  [Plaintiff] is unable to do anything for anyone

because he tires so easily and he has a great deal of pain in his back and legs."  Tr. 204. The ALJ did not address these assertions by Mr. Fowler, nor did she explain why they were disregarded in her decision.  This was error.  *Nguyen*, 100 F.3d at 1467.

## IV.   Remand.

As with her rejection of Plaintiff's pain testimony, the Court cannot determine whether the ALJ's discounting of Mr. Fowler's testimony was harmless error.  The ALJ's hypothetical questions to the vocational expert included virtually all of Plaintiff's physical limitations, and the expert said Plaintiff could perform his past work of customer service or club manager.  But the ALJ did not include chronic pain (as confirmed by Mr. Fowler's assertion) in her question, and the Court therefore cannot determine whether inclusion of that symptom would have produced a different result.  On remand, the AJL should credit Plaintiff's pain testimony as true.  *See Benecke v. Barnhart,* 379 F.3d 587 (9th Cir. 2007) ("Because the ALJ failed to provide legally sufficient reasons for rejecting Benecke's testimony and her treating physicians' opinions, we credit the evidence as true.").  The Court should also credit as true Mr. Fowler's assertions.  *Id.* With this evidence credited as true, the ALJ must determine whether Plaintiff's RFC precludes him from performing his past work, and, if not, whether that work exists in substantial numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

**IT IS ORDERED:**

1.     Defendant's decision denying disability insurance benefits and supplemental security benefits is **reversed**.    This action is remanded for further proceedings consistent with the discussion above.

2.     The Clerk is directed to terminate this action.

Dated this 20th day of June, 2012.

_____
David G. Campbell
United States District Judge